UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:16-cv-00257-MOC

| | |
|---|---|
| **BRADLEY ALAN GRIFFEY** | ) |
| | ) |
| | )     ORDER |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| **NANCY BERRYHILL,** | ) |
| **Acting Commissioner of Social Security** | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER** is before the court on the parties' opposing Motions for Summary Judgment (#6 and #7). The matter is ripe for review. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I. Administrative History

Plaintiff applied for Title II disability and disability insurance benefits in October 2013, alleging that he became disabled on April 30, 2013. (Tr. 16). His claim was denied at the initial and reconsideration levels of review. (Tr. 16). Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 96-97). A hearing was held before Michael Davenport, an ALJ, on October 15, 2015, at which plaintiff had an attorney representative present. (Tr. 16, 31). In a December 9, 2015 written decision, the ALJ denied the plaintiff's claim. (Tr. 16-30). Plaintiff requested review of the ALJ's decision. (Tr. 9-10). The request for review was denied by the Appeals Council on March 10, 2016 (Tr. 1-3), rendering the ALJ's decision the final decision

of the Commissioner. See 20 C.F.R. § 404.981. Plaintiff has exhausted his available administrative remedies and the case is now ripe for judicial review under Section 205(g) of the Social Security Act. See 42 U.S.C. § 405(g).

## II.     Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision,

> then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The court finds that the ALJ's decision was supported by substantial evidence.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title XVI pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

    e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

**C. The Administrative Decision**

At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since April 30, 2013, which was the claimant's alleged onset date. (Tr. 18). At step two, the ALJ found that the plaintiff had the following severe impairments: obesity, osteoarthritis of the knees, and degenerative disc disease . (Tr. 18-19). At step three, the ALJ determined that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19).

The ALJ concluded that the plaintiff had the residual functional capacity (RFC) to perform light work,  with a sit/stand option (as frequent as every half-hour) with no overhead reaching or lifting (Tr. 19).

At step four, the ALJ found that plaintiff Griffey could not perform his past relevant work. (Tr. 25). At step five, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that the plaintiff could perform, given his age, education, work experience,

and RFC. (Tr. 25-26). Accordingly, the ALJ determined that the plaintiff had not been under a disability within the meaning of the Social Security Act, 20 C.F.R. 404.1520(g), from July 27, 2012. (Tr. 26).

**D. Discussion**

The court has closely read plaintiff's Memorandum of Law (#6-1) supporting his Motion for Summary Judgment. Plaintiff has made the following assignments of error,[1] both about the misapplication of SSR 02-1p:

I. The ALJ erred in applying SSR 02-1p in considering the claimant's obesity; and

II. The ALJ erred in applying SSR 02-1p in evaluating the claimant's Residual Functional Capacity ("RFC")

(#6-1) at 3. Plaintiff's assignment of error will be discussed below.

**1. Claimant's Obesity**

Plaintiff argues that the ALJ erred in failing to find that Mr. Griffey's obesity met or exceeded the Listings. The court reviews this allegation of error not for the ultimate conclusion—whether Mr. Griffey's impairment met or exceeded a listing—but instead whether the ALJ had substantial evidence upon which to make this determination. The court finds that the ALJ had substantial evidence to make such an assessment.

According to the plaintiff, the medical records in the case provide "little dispute as to the claimant's obesity being severe and medically determinable." (#6-1) at 4. Indeed, the ALJ found this at Step Two, noting that the claimant's obesity was a "severe" impairment. The allegation of

---

[1] The Memorandum notes that the plaintiff "disagrees" with the ALJ's assessment. (#6-1) at 3. Simple disagreement would not generally give rise to error, especially under the applicable standard of substantial evidence. Even so, the court will analyze the issues presented by the plaintiff as allegations of error rather than disagreements with the ALJ's determination.

error concerns SSR 02-1p, and the plaintiff disagrees with the ALJ in how it was applied here. (#6-1) at 5. It is not the court's role to re-weigh the evidence and decide whether alleged impairments meet or exceed the Listings; instead, the court is asked whether the ALJ had substantial evidence for making such a determination. SSR 02-1p does not mandate that ALJ's make a particular determination regarding Step Three, the Listings. As SSR 02-1p is central to claimant's alllegations of error, the court will review it at length.

Plaintiff argues that the ALJ erred in failing to find that he should have been limited to nonproduction work. The court reviews this allegation of error not for the ultimate conclusion—whether plaintiff should be limited to nonproduction work—but instead whether the ALJ had substantial evidence upon which to make this determination. The court finds that the ALJ had substantial evidence to make such an assessment.

> If an individual has the medically determinable impairment obesity that is "severe" as described in question 6, we **may** find that the obesity medically equals a listing. (In the case of a child seeking benefits under title XVI, we may also find that it functionally equals the listings.) We **may** also find in a title II claim, or an adult claim under title XVI, that the obesity results in a finding that the individual is disabled based on his or her residual functional capacity (RFC), age, education, and past work experience. However, we will also **consider** the possibility of coexisting or related conditions, especially as the level of obesity increases. We provide an example of when we may find obesity to medically equal a listing in question 7.
> ***
> **Because there is no listing for obesity**, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments.
> ***
> We **may** also find that obesity, by itself, is medically equivalent to a listed impairment (or, in the case of a child applying under title XVI, also functionally equivalent to the listings). For example, if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b

> of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and we will then make a finding of medical equivalence. (See question 8 for further discussion of evaluating the functional effects of obesity, including functional equivalence determinations for children applying for benefits under title XVI.)

<u>Titles II & Xvi: Evaluation of Obesity</u>, SSR 02-1P (S.S.A. Sept. 12, 2002), at *4-5 (emphasis added). As noted with emphasis above, SSR 02-1p does not mandate an ALJ to make a finding that obesity meets or exceeds a Listing. Indeed, SSR 02-1p notes that there is not a specific Listing for obesity. Instead, an ALJ *may* make a determination that obesity, by itself or in conjunction with other impairments, meets or exceeds a Listing.

In this case, the ALJ adequately reviewed the extant medical evidence in Step Three, specifically discussing Listings 1.02 and 1.04. (Tr. 19). The court notes that at Step Three, the claimant has the burden to show a Listing was met or exceeded. <u>Pass v. Chater</u>, 65 F.3d 1200, 1203 (4th Cir. 1995) (noting that the burden of proof and production during the first four steps of the inquiry rests on the claimant). The ALJ discussed the plaintiff's ability to ambulate effectively, based on the medical records presented. As he was able to do so, he did not meet all of the specified medical criteria for these Listings. *See Sullivan v. Zebley,* 493 U.S. 421, 530-31 (1990) (noting that claimants must show that an impairment meets all specified criteria to meet or exceed a Listing). Accordingly, the court finds no error and concludes that the ALJ's finding was based on substantial evidence.

### 2. Claimant's RFC

Plaintiff's second allegation of error argues that the ALJ failed to correctly apply SSR 02-1p in evaluating the RFC. Specifically, the plaintiff alleges that the ALJ inadequately assessed the effect of plaintiff's obesity on his ability to sustain work activities, both exertional and non-exertional. (#6-1) at 6.

SSR 02-1p discusses the evaluation of obesity within the context of the RFC in ¶ 8:

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.
> The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.
>
> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.
>
> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

Titles II & Xvi: Evaluation of Obesity, SSR 02-1P (S.S.A. Sept. 12, 2002) at *6 (footnote omitted). SSR 02-1p goes on to explain in ¶9 that functional limitations arising from obesity will be considered when the obesity is found to be medically determinable.

> When we identify obesity as a medically determinable impairment …, we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments that we identify.

Titles II & Xvi: Evaluation of Obesity, SSR 02-1P , at *7 (S.S.A. Sept. 12, 2002).

In the instant case, plaintiff argues that the ALJ failed to discuss and assess "what effect the established severe impairment of obesity had upon Mr. Griffey's ability to perform routine movements in the work environment." (#6-1) at 7. The ALJ, however, specifically discussed the plaintiff's obesity at numerous points in his written decision. (Tr. 20, 22, 23-24). With regard to routine movements, the ALJ noted that the plaintiff was walking one-half to a mile per day, had a normal gait, and was able to sit, stand, walk, and move about in "satisfactory manner." (Tr. 23). The ALJ also noted that the plaintiff was able to hunt, camp, and race as well as prepare simple meals, perform household chores, drive, and visit relatives. (Tr. 24). The ALJ also specifically details the weight given to medical findings, specifically that the plaintiff's back and knee pain came from his obesity. (Tr. 24). The ALJ noted that subsequent to bariatric surgery, plaintiff lost considerable weight, and this weight loss was expected to continue, which the ALJ noted will likely improve his back and knee issues. (Tr. 24) Further, the ALJ detailed the limitations upon which the medical professionals opined, and the ALJ concluded that the claimant was *more* restricted than the state agency medical consultant had indicated. (Tr. 24) (noting that the state agency consultative expert indicated that plaintiff could perform medium work, but the ALJ concluded that the claimant's limitations were "certainly" such that he could perform only light work). Specifically, the ALJ noted limitations in the claimant's ability to sit and stand, which were incorporated into the eventual RFC finding. (Tr. 19, 24). With regard to the duration of these limitations, the ALJ's RFC finding included the further limitation that the plaintiff be given the option to sit or stand as frequently as every half hour. (Tr. 19).

As noted above, SSR 02-1p mandates that RFC assessments "consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." In this case, the ALJ specifically discussed the plaintiff's obesity and the

aspects of work that may be affected by this condition, such as sitting, standing, carrying, walking, and manipulating the hands and fingers. (Tr. 24). In addition, the ALJ noted that the plaintiff may have difficulty in working overhead for long periods of time and included that limitation in his RFC finding. (Tr. 19, 23-24).

The court is asked whether the ALJ had substantial evidence upon which to base his determination. Put another way, a court must ask whether the ALJ has sufficiently explained his decision-making process with regard to his obesity in assessing the plaintiff's RFC. Here, the court is not "left to guess" at how the ALJ arrived at his determinations of the plaintiff's RFC. See Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015). Underlying his concern, plaintiff argues that the ALJ should have included further limitations because of his severe and medically determinable obesity. (#6-1) at 7-8. The ALJ specifically addressed these concerns, and he went on to note that that plaintiff's statements concerning the "intensity, persistence, and limiting effects" of his impairments were "not entirely credible." (Tr. 23). In his opinion, the ALJ reviewed medical evidence and assessed functional limitations in light of the overall record, assigning weight to each and explaining his rationale for doing so. (Tr. 19-25).

The ALJ in this case made a determination based on substantial evidence and provided a sufficient explanation of how and why he determined plaintiff's RFC. The extensive discussion here was far more than the comparable boilerplate assessment in Mascio and was more than enough for this reviewing court to assess whether substantial evidence existed for the ALJ's decision.

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's

assignment of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra at 401, plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) the decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED;**

(2) plaintiff's Motion for Summary Judgment (#6) is **DENIED;**

(3) the Commissioner's Motion for Summary Judgment (#7) is **GRANTED;** and

(4) this action is **DISMISSED.**

Signed: May 10, 2017

Max O. Cogburn Jr
United States District Judge